**PINEHURST COUNTRY CLUB, a nonprofit corporation organized and existing under the laws of the State of Colorado, and Major General Kingston E. Tibbetts (U.S.A.F. Ret.), Charles S. Meurer, George Balajty, Jack L. Faust, and Norman Patrick, as members of Pinehurst Country Club, on behalf of themselves and on behalf of all other members of Pinehurst Country Club similarly situated, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 8365.**

United States District Court
D. Colorado.

Nov. 2, 1965.

Arnold C. Wegher, Denver, Colo., for plaintiffs.

Lawrence E. Doxsee, Trial Atty., Dept. of Justice, Washington, D. C., for defendant.

CHILSON, District Judge.

This matter came on for trial to the Court without a jury on October 25, 1965, and the Court having heard the evidence and argument of counsel, took the matter under advisement.

This is an action for the refund of federal excise taxes which were assessed against and paid by the five individual plaintiffs to the defendant.

■ The Pinehurst Country Club has paid no excise taxes which are the sub-ject of the claims for refund and is not a proper party plaintiff hereto.

■ Insofar as the individual plain-tiffs seek to recover on behalf of all of the members of the Pinehurst Country Club similarly situated, this Court has no jurisdiction. The only claims considered are the individual claims of the individual plaintiffs, Tibbetts, Meurer, Balajty, Faust, and Patrick.

The Pretrial Order contains a stipulation of the parties as to uncontroverted facts. This was supplemented at the trial by oral evidence and the introduction of documentary evidence.

This action involves the question of the taxability of amounts paid by the plaintiffs to Pinehurst Country Club pursuant to a levy by the club upon its members of an assessment for the construction of social and athletic facilities for the use of the club members.

During the period from January 1, 1959 to November 1, 1959, the applicable statutes (26 U.S.C.A., Sections 4241, 4242, and 4243(b)) provided as follows:

Section 4241 imposed a 20% tax on amounts "paid as initiation fees" to any social or athletic club.

Section 4242 defined the term "initiation fees" as including "any payment, contribution, or loan, required as a condition precedent to membership * * *."

Section 4243(b) exempts assessments for construction of facilities as follows:

"(b) Assessments for Capital Improvements.—*Notwithstanding any other provision of this part*, there shall be exempted from the provisions of section 4241 any assessment paid for the construction or reconstruction of any social, athletic, or sporting facility (or for the construction or reconstruction of any capital addition to, or capital improvement of, any such facility)." (Emphasis added.)

The defendant contends the assessments for construction were payments "required as a condition precedent to

membership" and were initiation fees and taxable.

The plaintiffs contend:

(1) The payment of the construction assessments was not a condition precedent to membership;

(2) Even if so construed, the payments were "for construction" of social and athletic facilities and "Notwithstanding any other provisions" of the Act, the construction assessments are exempt under Section 4243(b);

(3) The defendant, by ruling the assessments exempt from tax in September, 1960 and the plaintiffs' reliance thereon, is now estopped to assert the tax.

## FINDINGS OF FACT

The Court makes the following findings of fact:

The Pinehurst Country Club (hereinafter referred to as "the Club") was incorporated under the laws of Colorado on August 26, 1958 as a nonprofit corporation for the purpose of promoting a low cost, high membership country club for persons whose incomes would not permit them to be members of then existing country clubs in the Denver area and persons who for other reasons were not members of any existing country club in the Denver area.

To promote the enterprise, the country club entered into agreement with a Colorado corporation known as Pinehurst Country Club Corporation (hereinafter called the "Corporation") whereby the latter would sell memberships in the Club, using a professional sales force, advertising, including radio and television, pamphlets, and other sales techniques, and provide management services.

At the organization meeting of the Club on August 26, 1958 (Exhibit C) the directors determined that the sales campaign for memberships would be conducted on the basis of obtaining from the applicant the membership fee established by the Club, "plus an agreement by the applicant to pay an additional amount * * * as a capital improvements assessment should such assessment be levied by the board of directors of the club." It was also determined that the applicants for membership should be encouraged to pay all or some portion of the possible assessment, so that inordinate collection difficulties might not result at such time as an assessment might be levied. To carry out this plan the Club entered into an escrow agreement with the First National Bank of Englewood (Exhibit E), which recited among other things that memberships were being sold for a fixed sum "plus an agreement on behalf of the applicants that such membership shall be subject to one assessment only, not in excess of an agreed amount, which assessment shall be for the construction of the club house, swimming pools, golf course, and other facilities of such club". The agreement further provided, "If a sufficient number of memberships cannot be sold within a reasonable time, the club may be forced to abandon its plans, in which event any funds deposited as proof of ability to meet an assessment shall be returned to such applicants." The escrow agreement further provided that the escrow may be terminated at any time after January 1, 1959 but not prior thereto, and upon termination of the escrow the funds shall be either paid to the club or refunded to the applicants, as determined by resolution of the board of directors of the club.

The sale of memberships commenced on August 27, 1958. The applications for membership contained the following statement:

"Applicant is to pay the sum of $_____ plus Federal excise tax to Pinehurst Country Club at the time of application and an additional amount not to exceed $_____ as an assessment for Construction and Improvements of Club facilities."

The applicant, as a condition precedent to membership, was required to pay in cash "at the time of application" the membership fee and excise tax thereon.

Those accepted and granted membership had the option of paying the so-

called "construction assessment" into the escrow account either in cash at the time of their admission to membership or in installments, and no distinction was made between those members who had and those who had not paid the construction assessment.

On April 23, 1959, the directors of the Club received a report that some 1250 memberships had been sold and that prospects for future sales were bright. The directors then took action authorizing contractual arrangements for the leasing of land and construction of facilities, and by resolution levied upon the members a nonrecurring assessment for construction of club facilities, and authorized the transfer of the escrow funds to a construction account of the Club, with the provision that each member's payments into the escrow fund should be a credit upon that member's construction assessment. After April 23, 1959, the payment of the membership fee and excise tax thereon at the time of application for membership remained a condition precedent to membership, but the members had the option of paying the construction assessment levied on April 23, 1959, either in cash or installments, and no distinction was made between those members who had and those who had not paid the construction assessment.

Neither the by-laws of the Club adopted in March, 1959, nor the minutes of the directors meeting of April 23, 1959, at which the construction assessment was levied, state or indicate that the payment of the construction assessment was a condition precedent to membership.

Many months prior to the levy of the assessment on April 23, 1959 the Club embarked on a number of social ventures and functions for the members. At that time the Club had received no construction assessments and had not yet determined whether or not any such assessment would ever be levied or when.

The Club did not receive either actually or constructively any of the escrowed funds until the termination of the escrow on April 23, 1959.

The plaintiff Tibbetts applied for membership on November 10, 1958; paid the initiation fee on November 12, 1958, and paid into the escrow account on December 13, 1958 the full amount of the possible assessment. Meurer applied for membership on November 10, 1958, paid his initiation fee on November 11, 1958, and paid into the escrow account the maximum amount of his possible assessment in installments between December 5, 1958 and April 20, 1959. Patrick applied for membership on April 6, 1959, paid his initiation fee on April 16, 1959, and paid into the escrow account on April 16, 1959 the maximum amount of his possible assessment. Balajty applied for membership on July 2, 1959 and on July 6, 1959 paid both the initiation fee and the assessment. Faust applied for membership on July 28, 1959, paid his initiation fee on July 30, 1959, and paid the assessment in installments between September 14 and November 1, 1959.

 The Court finds as a matter of fact that the so-called construction assessments were not payments "required as a condition precedent to membership" and are not initiation fees within the meaning of Section 4242.

The Court finds as a matter of fact that the so-called construction assessments were assessments paid by the members for the construction of social, athletic or sporting facilities, and were exempt from the tax imposed by Section 4241 as assessments for capital improvements within the meaning of Section 4243(b) as said section was effective during the period from January 1, 1959 to November 1, 1959.

The Court finds as a matter of fact that the plaintiffs are entitled to recover the amounts paid by them, together with interest as provided by law.

### ESTOPPEL

In August, 1960, the Internal Revenue Service proposed to hold the construction assessments subject to the tax provided in Section 4241. Thereupon, at a special meeting of the directors of the Club

held on August 4, 1960, the Club took action to refund all assessments to those who had paid them by crediting to the members' accounts the amount of the assessments and to reassess the same as of September 1, 1960. In September, 1960, Section 4243 of the Act had been amended to exempt from the tax imposed by Section 4241 "any amount paid as dues or membership fees or as initiation fees * * * for the construction * * of any social, athletic, or sporting facility * * *." The directors were advised by their tax consultant that by so refunding the assessments and making a new assessment in September, 1960, the Club would avoid any tax on the construction assessments whether they were construed as initiation fees or as construction assessments.

The Club also sought to be heard with regard to the taxability of the construction assessments, and as a result there was a conference held in Washington, D. C., at which hearing the Club representative advised the Treasury Department of its plan to refund the assessments and to reassess as of September, 1960.

On September 30, 1960, the Rulings Division of the Internal Revenue Service issued a ruling that the construction assessments were exempt under the provisions of Section 4243(b), and thereupon the Club abandoned its plan to refund the assessments and make a reassessment.

The Court finds that in September, 1960, the Club had sufficient funds available to carry out the plan of refunding the assessments and making a reassessment.

On September 5, 1961, the Revenue Service, proceeding upon its own initiative and upon the same facts, revoked its ruling of September 30, 1960 and determined that the construction assessments were taxable as initiation fees. After a conference with the Club's representative on January 19, 1962, the Sep-

tember 5, 1961 determination was reaffirmed by the Internal Revenue Service.

The secretary-treasurer of the Club testified that on September 5, 1961, the date that the Internal Revenue Service reversed its ruling, the Club was not in a financial condition to refund the assessments and make a reassessment thereof.

The plaintiffs contend that these facts estop the defendant from asserting the tax.

Since the Court has found that the payments in question were exempt from taxation, the Court does not determine the question of estoppel.

## CONCLUSIONS OF LAW

The Court concludes as a matter of law that the amounts paid by the plaintiffs and each of them as "construction assessments" were not amounts required to be paid as a condition precedent to membership in the Club, and were not and are not initiation fees within the meaning of Title 26 U.S.C.A., Section 4242(b), and that the "construction assessments" paid by the plaintiffs, either into the escrow account or to the Club, were assessments paid for the construction of social, athletic and sporting facilities within the meaning of Title 26 U.S.C., Section 4243(b) as such section was amended on September 2, 1958 by Public Law 85–859 and are and were exempt from the tax imposed by Section 4241.

The Court further concludes as a matter of law that the plaintiffs are entitled to a refund of the amounts assessed by the defendant and paid by the plaintiffs, together with interest thereon as provided by law.

It is therefore ordered that the parties shall prepare and submit to the Court within 10 days a form of judgment, including a computation of the amount of the judgment which should be entered by the Court.